Mr. Justice Shepard
delivered the opinion of the Court:
This is an interference proceeding between rival claimants of priority of invention of an improvement in voting machines, as they are called. Both had previously made records in the particular art and were inventors of demonstrated shill. Both were well informed in respect of the *499 difficulties that had developed in the practical operation of former machines, and aware that these must be overcome by improvements before they could be expected to come into anything like general use and prove of commercial value.
Acting independently, each sought to overcome those difficulties by devising and constructing a new and improved machine that would come up to the requirements and stand the strain of use in actual public elections. The purpose was to produce a machine that would enable each successive voter to register his vote not. only for the nominated or otherwise named candidates on the printed ticket, but also for any other person whom he might prefer, and, at the same time, render it impossible for him to tamper with the machine or to vote for more than one person for a single office, or more than the exact number permitted by law where more than one could be elected. Both produced machines and filed applications for patents thereon as follows: Christ Christensen on May 17, and Wilson B,. Ellis on June 17,1898. The interference was declared upon the allowance of these with an issue defined as follows:
“In a voting-machine, the combination of a line of voting-keys, an autographic roll or sheet arranged parallel with the line of voting-keys, covers individually raised by certain of the keys and disclosing sectional portions of the auto^ graphic roll, means for exposing names of nominated candidates each opposite to one of the remaining keys in said line, parallel series of mechanical counting devices individually controlled by said remaining keys, and means for simultaneously resetting all keys, for nominated candidates or otherwise, which have been operated.”
The preliminary statement of Ellis, upon whom lies the burden of proof, alleged conception and disclosure to others about February 1, 1897, preparation of working drawings about November 1, and the completion of a full-sized *500 machine about February 15, 1898, together with its successful operation promptly thereafter. Christensen alleged conception in December, 1896, making of sketches and model in April, 1897, disclosure to others in May, and the construction of a full-sized, operative machine in February, 1898.
The three tribunals of the Patent Office have substantially agreed with each other upon the facts established by the evidence; their differences of opinion exist in the application of the law to those facts. The facts so agreed upon are, that Ellis conceived the invention of the’ issue in March, 1897, and ' Christensen in or about the last of August, 1897; that Ellis completed his full-sized machine in March, 1898, and Christensen completed his in February, 1898; that Ellis’s machine was thoroughly tested in April and May, 1898, and its operativeness completely demonstrated; and that there was no proof that Christensen’s machine had been put to the test of actual operation.
Upon the facts so found, the examiner of interferences and the examiners in chief, in succession, awarded priority of invention to Christensen.
The reasons for their decisions, as recited therein, are: First, that the completion of Christensen’s full-sized machine, which had been produced and made an exhibit, was itself a reduction to practice; second, that Ellis had lost the benefit of his earlier conception through laches. The Commissioner, in reviewing the decision of the examiners in chief, expressed the opinion that the mere completion of the full-sized machine by Christensen did not amount to reduction to practice. Passing that question, however, he decided that Ellis’s delay, under the circumstances attending the same, did not amount to laches that would deprive him of his right as against the later conception of Christensen, even if the latter’s earlier reduction to practice were conceded.
The tribunals of the Patent Office having fully and fairly *501 reviewed the evidence, and agreed upon the order of the dates awarded to the parties respectively in the matters of conception of the invention and the construction of machines embodying the same, we see no occasion for additional discussion. We are completely satisfied with the correctness of their conclusion, after an examination of the testimony, which, in its entirety, is more direct and apparently more candid than is common in this class of cases.
Ellis having been the first to conceive the invention, it remains to consider whether he was guilty of such laches in reducing it to practice, as ought to subordinate his right to that of Christensen, who, in the meantime, entered the field and earlier reduced to practice — assuming, for the present, that the construction of his machine in February, 1898, amounted to a reduction to practice.
On this point we agree with the Commissioner that Ellis was not wanting in diligence. It is hardly necessary to say, that there is no fixed rule of diligence applicable to all cases alike. Whether ordinary diligence, or its opposite, has been shown, or the delay shown shall be regarded as excusable or inexcusable, must necessarily depend upon the special circumstances surrounding the actions of the party in the particular case wherein the application of the rule may be sought.
In considering the conduct of Ellis, it must be borne in mind that these machines are complicated and in tbeir original construction involved the expenditure of a considerable amount of money. Ellis was without means and was compelled to seek aid for the exploitation of his ideas. The doubtful commercial value of the invention rendered it difficult to obtain this aid, and parties furnishing it naturally insisted upon development in the line of least expense. Ellis clearly had the idea of a voting machine improved in several important respects, with the addition of the autographic roll mechanism for the record of the *502 “ scattering votes.” He first developed his general improvements ; but in making his first machine added the separate card attachment for this scattering vote.
This was done with no intention to abandon the other attachment, but upon suggestion to save expense.
Both Ellis and Christensen lived in California and their work was done in that State.
Ellis exhibited his machine, in the presence of his then “backer,” Pierce, to the secretary of the commission, appointed under the act of the legislature of California, to inquire into the question of mechanical voting machines with a view to their adoption. That gentleman was more pleased with the machine than any he had seen, but found fault with the manner of handling the independent or scattering votes, not on account- of the mechanical defects, however, but for “political reasons.” The use of an auto-graphic roll was not then an unknown thing in voting machines, nor was that of the card system.
The secretary, aforesaid, who was familiar with the forms of various voting machines, suggested that the only satisisfactory solution of the difficulty in dealing with the scattering votes lay in substituting the card attachment of the machine shown him by some satisfactory adaptation of the use of the autographic roll. This machine had thirty keys and had been constructed with full knowledge of the mechanism of both systems, and was adapted to receive either form of attachment.
Ellis then went to work and improved the interlocking movement of the keys of the main machine, and within a reasonable time set about the construction of his autographic roll attachment.
The entire work was finished in March, 1898. After finishing, the machine was exhibited to a great many persons in San Francisco, and operated successfully. It was used in mock elections and -thoroughly tested in' a mock or real election (it does not appear clearly which) about May 7, *503 1898, in Livermore, where Ellis resided. His next step was to file the application for patent on June 17, 1898.
Without reviewing the evidence at length, we think it sufficient to say that we entirely concur in the following views expressed in the Commissioner’s decision:
“ Ellis’s testimony shows that he preferred the autographic roll attachment and intended to apply it to his machine as soon as the main features of the machine were proved. He was too poor himself to attempt the construction of the machine, and his financial backers-insisted thát the cheaper species should be first built in order to test by it the efficacy of the broad idea. When the cheaper machine was built, and it was demonstrated that the broad idea was feasible, but it was found that the specific attachment wa.s objectionable to the voting commissioners, then Ellis’s backer advanced means with which to build the other form of device. This seems to be the natural course, and the course to be expected in such a case as this. This is not a case where the inventor has put aside one invention for another. There is no evidence to show that Ellis gave up the idea of the autographic roll attachment — the important feature of the issue — but, taking the evidence as a whole, it seems to me that he was using reasonable diligence and pursuing the course that would be expected of a business man under such circumstances.”
Of the many cases that have come before us involving the determination of this question of the exercise of diligence in reducing conception to practice, the one most nearly like the case at bar, is McCormick v. Cleal, 12 App. D. C., 335,341. In that we held that the circumstances surrounding the conduct of the inventor, which closely resemble those surrounding Ellis’s, were sufficient to excuse his delay and preserve the right acquired through the first clear conception of the invention. We quote the last paragraph of the opinion in that case as quite applicable to the case made by Ellis:
*504 “In the light of these circumstances we can not regard his delay as inexcusable. It would be unjust to do so. Some reasonable indulgence, where lapse of time only is in the way, ought to be extended to an inventor who was thus engaged in perfecting and attempting to bring out all of the merits of his invention.” See, also, Griffin v. Swenson, 15 App. D. C. 135, 142; De Wallace v. Scott, 15 App. D. C. 157, 163.
The next question presented by the record, is, whether the construction by Christensen of a full-sized and apparently practical machine in February, 1898, without proof of an actual test or trial, constituted reduction to practice. The determination of this has been rendered unnecessary by the conclusion above stated that Ellis had followed up his invention with sufficient diligence to entitle him to the benefit of his earlier conception, and it will not, therefore, be considered.
It follows that the decision appealed from must be affirmed. It is so ordered, and that this decision be certified to the Commissioner of Patents as required by law. Affirmed.